**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

LEWIS JERMAINE CHAPMAN,        )
                               )
                Petitioner,    )
                               )
        v.                     )   1:11CV194
                               )
JOEL HERRON,                   )
                               )
                Respondent.    )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) On September 19, 2007, in the Superior Court of Guilford County, a jury found Petitioner guilty of three counts of robbery with a dangerous weapon in cases 06 CRS 89165, 89166 and 89168. (Docket Entry 10, Ex. 3 at 32-34; see also Docket Entry 1, ¶¶ 1, 2, 4-6.)[1] The trial court sentenced Petitioner to three consecutive sentences of 105 to 135 months of imprisonment. (Docket Entry 10, Ex. 3 at 45-50; see also Docket Entry 1, ¶ 3.)[2] Petitioner appealed his convictions to the North Carolina Court of Appeals (Docket Entry 10, Exs. 1, 3-5; see also Docket Entry 1, ¶¶ 8, 9(a)), which court denied his appeal, State v. Chapman, No. COA08-488, 2008 N.C. App. LEXIS 1992 (Nov. 4, 2008) (unpublished). Petitioner then filed a petition for discretionary review with the

---

[1] For attachments to Respondent's memorandum in support of his motion to dismiss lacking internal pagination, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

[2] The Judgment and Commitment Forms reflect the date September 20, 2007. (Docket Entry 10, Ex. 3 at 45-50.)

North Carolina Supreme Court (Docket Entry 1, ¶ 9(g)), which that court dismissed on February 5, 2009 (Docket Entry 10, Ex. 2; see also Docket Entry 1, ¶ 9(g)(3), (4)). Petitioner did not thereafter file a petition for certiorari in the United States Supreme Court. (Docket Entry 1, ¶ 9(h).)

Petitioner alleges that he filed a pro se "habeas corpus" petition with the state trial court on June 10, 2009 (Docket Entry 1, ¶ 11(a)(1)-(6)),[3] and that the trial court denied his petition on July 24, 2009 (id., ¶ 11(a)(7), (8)). Petitioner thereafter submitted a motion for appropriate relief ("MAR") to the state trial court (Docket Entry 10, Ex. 6),[4] which the trial court accepted as filed on December 23, 2009 (Docket Entry 10, Ex. 7 at 2 (indicating date filed). Petitioner filed an amended MAR with the trial court on January 25, 2010. (See Docket Entry 10, Ex. 7 (indicating date filed.)[5] The trial court denied the MAR by order dated March 22, 2010, and filed March 23, 2010. (Id.; see also Docket Entry 1, ¶ 11(b)(7), (8).) Petitioner then filed a pro se certiorari petition with the North Carolina Court of Appeals (Docket Entry 10, Ex. 8; see also Docket Entry 1, ¶ 11(c)), which he dated as submitted on June 22, 2010 (Docket Entry 10, Ex. 8 at

---

[3] Neither Petitioner nor Respondent have provided the Court with a copy of this filing, although Petitioner has submitted an Affidavit averring that he did in fact file the document with the state trial court and that the trial court denied any relief. (Docket Entry 14-2 at 40.)

[4] The copy of Petitioner's MAR provided to the Court does not reflect the date(s) on which it was signed or submitted to prison authorities for filing, but the Petition identifies the filing date as December 23, 2009. (Docket Entry 1, ¶ 11(b)(3).)

[5] The record before the Court does not appear to contain a copy of this amended MAR.

-2-

8, 9), and which that court received as filed on June 28, 2010 (id. at 2; see also Docket Entry 1, ¶ 11(c)(3)).[6]  The Court of Appeals denied that petition on July 7, 2010.  (Docket Entry 10, Ex. 10; see also Docket Entry 1, ¶ 11(c)(7), (8).)

Petitioner thereafter submitted his Petition in this Court (Docket Entry 1), which he dated as mailed on March 7, 2011 (id. at 14),[7] and which the Court received as filed on March 10, 2011 (id. at 1).  Respondent moved to dismiss the Petition on statute of limitation grounds.  (Docket Entry 4.)  Petitioner filed various materials in response (see Docket Entries 12-14), which the Clerk of Court construed as a response in opposition to Respondent's instant Motion to Dismiss.[8]

### Petitioner's Claims

Petitioner raises five claims for relief in his Petition: (1) the trial court improperly joined all three charges for a single trial; (2) trial counsel provided ineffective assistance by failing

---

[6] The Petition identifies no other appellate-level collateral filings. (See Docket Entry 1, ¶¶ 11, 12.)

[7] For portions of the Petition lacking paragraph numbers, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

[8] On July 13, 2011, Petitioner filed a document entitled "Motion for an Order (Injunctive) Compelling Respond[e]nt's Reply" (Docket Entry 15), requesting the Court to compel Respondent to file a response to Petitioner's "Mot[io]n Objecting to Respond[e]nt[']s Mot[io]n Denying Petitioner's Habeas Corpus" (Docket Entry 12) and brief in support (Docket Entry 13).  Prior to the Court's ruling on Docket Entry 15 (the Court denied the motion on August 2, 2012, see Docket Entry 24), Respondent filed on July 26, 2011, an Answer to the Petition (Docket Entry 17), a Motion for Summary Judgment addressing the merits of Petitioner's claims (Docket Entry 18), and a brief in support (Docket Entry 19).  In light of the conclusion that the Court should grant Respondent's instant Motion to Dismiss, the Court need not reach Respondent's arguments on the merits of Petitioner's claims.

-3-

to move to sever the charges; (3) because of improper joinder of the charges, witness identification pertaining to one charge prejudicially affected the jury's consideration of the two remaining charges; (4) the trial court erred by permitting the jury to review certain evidence during deliberations; and (5) double jeopardy attached to his convictions and sentences on three separate charges arising out of a common scheme or plan. (Docket Entry 1 at 5, 6-7, 8, 10, 18-26.)

## **Discussion**

Respondent moves for dismissal of the Petition on the grounds that the Petition was filed[9] outside of the one-year limitation period. 28 U.S.C. § 2244(d)(1).[10] In order to assess Respondent's

---

[9] "In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); but see Smith v. Woodard, 57 F. App'x 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 F. App'x 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court need not consider this matter further.

[10] Contrary to Petitioner's assertion that the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") (which adopted the relevant limitations provision) applies only to death penalty cases, AEDPA applies to all § 2254 petitions filed after April 24, 1996. Brown v. Angelone, 150 F.3d 370, 372 (4th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320, 336-37 (1997)); Moore v. Beck, No. 1:06CV997, 2007 WL 2226010, at *1 (M.D.N.C. Aug. 1, 2001) (unpublished) (citing Lindh).

-4-

statute of limitation argument, the Court first must determine when Petitioner's one-year period to file his § 2254 Petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

<u>Green v. Johnson</u>, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

The record does not reveal any basis for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply in this case. As a result, Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

-5-

Here, the trial court entered judgment against Petitioner on September 20, 2007 (see Docket Entry 10, Ex. 3 at 45-50), the Court of Appeals denied his appeal on November 4, 2008 (see id., Ex. 1), and the North Carolina Supreme Court denied his petition for discretionary review on February 5, 2009 (see id., Ex. 2). Petitioner did not file a certiorari petition with the United States Supreme Court. (Docket Entry 1, ¶ 9(h).) As Respondent has asserted (Docket Entry 10 at 2-3), and Petitioner has not disputed (Docket Entry 12 at 1-5; Docket Entry 13 at 6-11), Petitioner's convictions thus became final on May 6, 2009, 90 days after the February 5, 2009 decision of the North Carolina Supreme Court denying the petition for discretionary review. See Clay v. United States, 537 U.S. 522, 527 (2003) (holding that "[f]inality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." (internal citations omitted)); see also Sup. Ct. R. 13.1 (allowing petitioners 90 days after highest state appellate court's denial to file for writ of certiorari).

The limitations period then ran for 35 days until Petitioner filed his habeas corpus petition with the state trial court on June 24, 2009.[11] As Petitioner did not appeal the state trial court's

---

[11] This approach gives Petitioner the benefit of the doubt in tolling the limitations period during the pendency of this state habeas petition based on an assumption that he did make such a filing and that it constituted "a properly filed application for State post-conviction or other collateral review with respect to" his September 20, 2007 judgments within the meaning of 28 U.S.C. § 2244(d)(2).

-6-

denial of that collateral filing, the statute of limitations began to run again, at the latest, 30 days after state trial court denied the petition. See McConnell v. Beck, 427 F. Supp. 2d 578, 582-83 (M.D.N.C. 2006) (ruling that North Carolina law did not explicitly address time to seek review of denial of MAR, but that such time would not extend more than 30 days absent unusual circumstances); see also Leonard v. White, No. 1:10CV443, 2011 WL 1103793, at *2 (M.D.N.C. Mar. 23, 2011) (unpublished) (following McConnell and citing Rhue v. Carroll, No. 5:05-HC-592-BO (E.D.N.C. Aug. 28, 2006) (unpublished), appeal dismissed, 229 F. App'x 214 (2007), for more restrictive position that limitation period begins to run immediately upon denial of MAR in absence of certiorari petition).

The limitations period then ran for 122 days until Petitioner filed his MAR in the state trial court and remained tolled until the North Carolina Court of Appeals denied Petitioner's certiorari petition on July 7, 2010. See Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999) (state collateral filings generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)").[12]

---

[12] Notably, the limitations period did not then toll for the 35 days permitted in direct appeals to file a petition for discretionary review with the North Carolina Supreme Court. See N.C. R. App. P. 32(b) (unless court orders otherwise mandate issues 20 days after written opinion filed); N.C. R. App. P. 14(a) & 15(b) (allowing 15 days after issuance of mandate to file notice of appeal or petition for discretionary review). North Carolina law does not
(continued...)

From that point, the limitations period ran for 208 days until it expired on January 31, 2011, without Petitioner having filed any post-conviction petitions in this Court or any further such petitions in the state courts. Petitioner's instant Petition, submitted to prison authorities on March 7, 2011, was thus 35 days late.

Petitioner does not dispute the foregoing time-line, but his Petition does advance several reasons why he believes the Court should consider the Petition despite its untimeliness. (Docket Entry 12 at 1-5; Docket Entry 13 at 6-11.) In other words, the Petition requests equitable tolling, which doctrine the Supreme Court has ruled applicable in this context, Holland v. Florida, 560 U.S. ___, ____, 130 S. Ct. 2549, 2562 (2010). Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)) (emphasis added).

---

[12](...continued)
provide for discretionary review petitions to the North Carolina Supreme Court in noncapital, post-conviction matters. See N.C. R. App. P. 21(e) (providing that certiorari petitions seeking review of court rulings on non-capital MARs "shall be filed with the Court of Appeals and the Supreme Court will not entertain petitions for certiorari or petitions for further discretionary review in these cases"); see also N.C. Gen. Stat. § 15A-1422(f) (declaring that "[d]ecisions of the Court of Appeals on motions for appropriate relief . . . are final and not subject to further review by appeal, certification, writ, motion, or otherwise"). Only "a properly filed application for State post-conviction or other collateral review" tolls the limitations period. 28 U.S.C. § 2244(d)(2). Furthermore, the fact that the North Carolina Supreme Court sometimes, in its discretion, suspends or creates exceptions to its procedural rules does not mean that a petition for discretionary review of a non-capital MAR should serve to toll the limitations period. See Rouse v. Lee, 339 F.3d 238, 245 (4th Cir. 2003) (en banc).

Petitioner first argues that equitable tolling should apply during the 187-day period between May 6, 2009, the date his convictions became final, and December 23, 2009, the date he filed his MAR. (Docket Entry 13 at 7.) Petitioner appears to contend that equitable tolling applies during this period because he did not know that the habeas petition he filed on June 10, 2009, in the state trial court was defective. (Id.) This argument lacks merit.

At the outset, the Court notes that it has given Petitioner the benefit of the doubt and has already tolled the limitations period during the pendency of his state habeas petition, i.e., from June 10, 2009, to July 24, 2009, plus an additional 30-day appellate grace period, even though Petitioner did not appeal the trial court's denial of that petition. Petitioner should have acted quickly to file a MAR after the trial court's July 24, 2009 order denying the habeas petition. Instead, he waited nearly five months to file a MAR on December 23, 2009. Moreover, Petitioner is not entitled to equitable tolling of the periods between May 6, 2009, and June 10, 2009, and between July 24, 2009, and December 23, 2009, because unfamiliarity with the legal process, even in the case of an unrepresented prisoner, does not constitute grounds for equitable tolling. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); March v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001); Turner v, Johnson, 177 F.3d 390, 392 (5th Cir. 1999); Gray v. Lewis, No. 1:11CV91, 2011 WL 4022787, at *3 (M.D.N.C. Sept. 9, 2011) (unpublished) (citing Hood v. Jackson, No. 5:10-HC2008-FL, 2010 WL 4974550, at *2 (E.D.N.C. Dec. 1, 2010) (unpublished), and

Dockery v. Beck, No. 1:02CV00070, 2002 WL 32813704, at *2 (M.D.N.C. Aug. 1, 2002) (Beaty, J., adopting recommendation of Eliason, M.J.) (unpublished)), adopted, slip op. (M.D.N.C. Nov. 4, 2011) (Beaty, C.J.)).[13]

Finally, Petitioner contends that the Court should excuse his late filing because he suffered a denial of his right of access to the courts due to the State's failure "to provide legal materials to litigate [his] case" or to appoint him counsel, citing Bounds v. Smith, 430 U.S. 817, 828 (1977), overruled on other grounds by Lewis v. Casey, 518 U.S. 343, 354 (1996). (Docket Entry 13 at 7, 11.) This argument lacks merit. Under Bounds, 430 U.S. at 821-28, the State has an obligation to provide either prison law libraries or assistance from persons trained in the law. Because inmates in this State have access to North Carolina Prisoner Legal Services, Inc., the State has no legal obligation to either appoint counsel or to provide law libraries for its inmates. See Burgess v. Herron, No. 1:11CV420, 2011 WL 5289769, at *2 (M.D.N.C. Nov. 2, 2011) (unpublished).

In sum, the Petition is untimely.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 9) be **GRANTED**, that Respondent's Motion for Summary Judgment (Docket Entry 18) be **DENIED** as moot, that the

---

[13] To the extent Petitioner argues that his indigency (Docket Entry 13 at 8), and status as a "layman at law" (id. at 7), warrant equitable tolling, these arguments fail for the same reason.

Petition (Docket Entry 1) be **DISMISSED,** and that this action be **DISMISSED.**

					/s/ L. Patrick Auld
					**L. Patrick Auld**
				**United States Magistrate Judge**


June 5, 2013